**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **MARY LINEHAN** | § | |
| | § | |
| **v.** | § | **Case No: 6:16-CV-00066-RWS-JDL** |
| | § | |
| **UNIVERSITY OF TEXAS AT TYLER** | § | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

The above-styled matter is referred to the undersigned for all pretrial matters in accordance with 28 U.S.C. § 636. Before the Court are Defendant University of Texas at Tyler ("UTT")'s Partial Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 8) and Motion to Dismiss Unexhausted Claims (Doc. No. 29). Also before the Court is Plaintiff's Motion for Leave to Amend (Doc. No. 31).

Having considered the parties' arguments, and the applicable law, the Court makes the following recommendations: (1) that Plaintiff's disability discrimination claims be **DISMISSED without prejudice**, (2) that Plaintiff's Motion for Leave to Amend be **GRANTED** (Doc. No. 31), (3) that Defendant's Partial Motion to Dismiss be **GRANTED-IN-PART** and **DENIED-IN-PART** (Doc. No. 8), and (4) that Defendant's Motion to Dismiss Unexhausted Claims be **DENIED** (Doc. No. 29).

**I.     BACKGROUND**

This is an employment discrimination case arising out of allegations of ongoing sex discrimination in violation of 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964), sex discrimination in violation of Chapter 21 of the Texas Labor Code (Texas Commission on

Human Rights Act), retaliation under Title VII and the TCHRA, and disability discrimination in violation of the Americans with Disability Act (ADA) and the TCHRA.

### A.  Discrimination Experienced by Ms. Linehan between 2010 and 2014.

The facts of this case are extensive and span the course of seven years. Ms. Linehan has been a tenured Associate Professor at UTT since April 8, 2009. (Pl.'s Am. Comp. ¶ 4.01, Doc. No. 3). She teaches U.S. History with a specialization in the role of women in history. (*Id*.). From 2009 through 2014, Ms. Linehan has taught during every academic year and summer. (*Id.* ¶ 4.02). During this time, Ms. Linehan received favorable performance appraisals and evaluations. (*Id.* ¶ 4.02).

Ms. Linehan states she began to experience adverse treatment based on gender around 2010, and that she and other female professors found that the work environment had become increasingly hostile. (*Id.* ¶ 4.03, 4.04). According to Ms. Linehan, she and one other female are the only two women in her department who have ever received tenure. (*Id.* ¶ 4.04). Ms. Linehan also alleges that the last two women who came up for tenure were both denied, that five of the last six job openings in the department were given to men, and that women made up only 17% of the candidates brought to UTT's campus to interview for these positions. (*Id.* ¶ 4.04).

Ms. Linehan describes several instances where UTT allegedly treated her less favorably than other male professors. The following are the specific incidents of purported discriminatory and retaliatory conduct that, according to Ms. Linehan's complaint[1], occurred between 2010 and the present:

---

[1] Ms. Linehan's Amended Complaint (Doc. No. 3) does not specify the dates on which she alleges these unlawful acts occurred. However, in her response to UTT's first motion, Ms. Linehan submitted a proposed Second Amended Complaint with general dates for the acts. As the Court recommends granting Ms. Linehan's motion for leave to file an amended complaint, *see infra* III.A., the Court will take into account the dates provided in the proposed complaint.

a. In 2010, Ms. Linehan was removed as Department Chair and replaced by a less qualified male. UTT's stated reasons for Ms. Linehan's removal was because she was "high handed" and had "unmanned" a former male professor, and had added a course on Women's History to the catalog.

b. In 2014, 2015, and 2016, Ms. Linehan did not receive legally required performance evaluations and was denied the opportunity for Post-Tenure Review, which Ms. Linehan observed was given to all similarly situated male professors.

c. From 2010 to the filing of the complaint, Ms. Linehan has been consistently awarded lower merit bonuses than were awarded to male professors within her department at her level. Ms. Linehan knows of at least one male Associate Professor who has similar teaching ratings, less experience, and significantly fewer publications who received an 11% merit increase as compared to Ms. Linehan's 2% increase.

d. During the 2013-2014 academic year, UTT placed severe restrictions on Plaintiff's teaching. Three of the courses permanently assigned to her were re-assigned to less qualified male professors despite her objections and protest. No similarly situated male professor "lost" a course during this period.

(*See id*. ¶ 4.05).

The events finally causing Ms. Linehan to file a discrimination complaint with the UTT Human Resources Department, the Equal Employment Opportunity Commission (EEOC), and ultimately this Court, began on May 13, 2014, when Ms. Linehan received a notice that she had been accused of sexual harassment by students. (*Id*. ¶ 4.12). That same day, Ms. Linehan reached out to her supervisor, Marcus Stadelmann, for counsel and advice, but he refused to respond to her. (*Id*. ¶ 4.13). The following day, Mr. Stadelmann canceled and reassigned Ms. Linehan's regularly scheduled summer courses, and on May 20, 2014, UTT canceled two of Ms. Linehan's three fall courses. (*Id*. ¶¶ 4.14, 4.15).

On June 4, 2014, still without any information about the accusations, Ms. Linehan filed a complaint alleging gender discrimination with UTT's HR Department and notified the EEOC about filing a claim for gender discrimination. (*Id*. ¶ 4.16). In her complaint, Ms. Linehan stated

that the sexual harassment complaints against her were part of the same gender discrimination that had been ongoing since 2010. (*Id*. ¶ 4.17). At UTT's request, Ms. Linehan states that she provided 125 pages of evidence supporting her claims. (*Id*. ¶ 4.16).

On June 6, 2014, Ms. Linehan was told of the specific allegations against her and who had made them. (*Id*. ¶ 4.20). Three of the four complaints against Ms. Linehan were made by students in her Spring 2014 class.  (*Id*. ¶¶ 4.21).  According to Ms. Linehan, these students had caused repeated disturbances during class, plagiarized the work of others, and did not do the class assignments. (*Id*. ¶ 4.06). Ms. Linehan consulted with Mr. Stadelmann about these students during the semester. (*Id*. ¶ 4.07). To address the students' performance, Ms. Linehan re-weighted the course grades in the second half of the semester. (*Id*. ¶ 4.08). The fourth complaint was made by Mr. Stadelmann's student assistant who was enrolled in Ms. Linehan's spring course. (*Id*. ¶ 4.21). Ms. Linehan alleges that all four of the complaints were strikingly similar, and the wording nearly identical. (*Id*. ¶ 4.22).

      B.  UTT Investigation is Announced and Ms. Linehan is Placed on Indefinite Administrative Leave.

Also on June 6, 2014, Martin Slann, the Dean of the College of Arts and Sciences, announced he was launching an investigation of academic misconduct against Ms. Linehan on the grounds that she changed the syllabus for the Spring 2014 course in the middle of the semester. (*Id*. ¶ 4.22). Ms. Linehan asserts that this investigation was a pretext for retaliation because the changing of grade weights mid-course was a frequent occurrence at UTT.  (*Id*. ¶¶ 4.28, 4.29). Ms. Linehan had even obtained approval from Mr. Stadelmann, the Department Chair, before changing the grade-weights. (*Id*. ¶¶ 4.28, 4.29). Moreover, Mr. Slann himself had been aware of the changes for over two months. (*Id*. ¶ 4.29).

On June 18, 2014, Ms. Linehan provided UTT with 250 pages of correspondence between herself, the students, and the College of Arts administration. (*Id.* ¶ 4.24). Nowhere in the correspondence produced was there any mention by any of the students of sexual harassment or unprofessionalism; in fact, two of the students in question filed their complaints while still enrolling in Ms. Linehan's upcoming courses. (*Id.* ¶ 4.25).

On July 15, 2014, Ms. Linehan reported to the HR Department and the EEOC that Mr. Slann's academic investigation was retaliatory. (*Id.* ¶ 4.33). Two days later, UTT announced that Ms. Linehan was to be placed on immediate and indefinite paid administrative leave, a further alleged act of discrimination and retaliation. (*Id.* ¶ 4.34).

In September of 2014, Ms. Linehan received a report on UTT's investigation into her discrimination complaints. (*Id.* ¶ 4.43). Only 8 of the 19-page report dealt with her claims, and the investigator failed to review or examine any of her evidence in support of her discrimination claim. (*Id.*). Ms. Linehan claims UTT's report contained more than three dozen factual errors, and included tampered documents presented by Ms. Stadelmann. (*Id.* ¶ 4.44). The report was sustained on appeal by then-Vice President Jesse Acosta, who was later forced out of the university for sexual harassment. (*Id.*).

C.  Ms. Linehan Files Charges with EEOC, and Complaint in Federal Court.

Ms. Linehan filed her first EEOC charge against UTT ("Charge I"), No. 450-2014-02514, on March 9, 2015, alleging that UTT placed and kept Ms. Linehan on extended mandatory suspension as a pretext for sexual discrimination and retaliation against her. (*See* Ex. A, Doc. No. 31-1 at 38).

On May 6, 2015, Ms. Linehan attended an interview conducted by UTT's Dean of Student who served as the Title IX Investigator, and the Assistant Dean of Nursing who served

as the investigator into the academic violations. (*Id*. ¶ 4.47). Ms. Linehan claims that a substantial portion of the interview consisted of asking her about incidents remote in time and which had nothing to do with the charges. (*Id*.).

Seven months after the interview, in November of 2015, Ms. Linehan contacted the American Association of University Professors (AAUP), putting UTT on notice that its treatment of Ms. Linehan violated professional standards of due process and academic freedom. (*Id*. ¶ 4.53).

Ms. Linehan received a Notice of Right to Sue for Charge I on December 10, 2015. (*See* Ex. B, Doc. No. 31-1 at 41).

On December 21, 2015, 602 days after Mr. Slann first announced the investigation, UTT issued its report on the charges of harassment and academic misconduct.  (*Id*. ¶ 4.54).

Under UTT's policy, charges of sexual harassment are to be investigated and resolved within 60 calendar days. (*Id*. ¶ 4.35). If charges are not resolved during this period, the individual is entitled to regular updates on the investigate progress. (*Id*. ¶ 4.35). Though UTT's stated justification for placing Ms. Linehan on leave was so that it could investigate the charges deriving from the Spring 2014 semester, Ms. Linehan claims that the delayed investigation was a pretext for retaliating against her, essentially placing her in "academic exile" and affecting her professional reputation. (*Id*. ¶¶ 4.40, 4.38). Ms. Linehan states that she was placed on administrative leave, a status that does not exist in the faculty handbook, for over 23 months, which resulted in her suffering economic, academic, professional, and other damages. (*Id*. ¶ ¶4.36- 4.41).

As further evidence of gender bias, Ms. Linehan states that in May of 2015, a male administrator was accused of sexually harassing 13 women over several years. (*Id*. ¶ 4.42). It

only took UTT a supposed six weeks to investigate and remove the suspected individual, yet it took UTT almost 23 months to investigate four identical complaints against her. (*Id*. ¶ 4.42). Ms. Linehan also claims that UTT has previously covered up sexual harassment allegations relating to three male tenured or tenure-track professors in the College of Arts and Sciences who had been accused of stalking or sexually harassing female students. (*Id*. ¶ 4.19). Allegedly, none of these professors had their courses taken away from them or appeared to have been punished in any other way. (*Id*.).

On February 5, 2016, Ms. Linehan filed a second charge with the EEOC ("Charge II"), No. 450-2016-01489, amending Charge I "to include an additional claim [of] disability discrimination" which occurred on or about December 21, 2015.  (*See* Ex. C, Doc. No. 31-1 at 43).  Charge II states that the investigative report issued by UTT on December 21, 2015 alleged that Ms. Linehan "violated certain academic attendance regulations and fail[ed] to show on time to teach certain classes," as a pretext for discrimination against Ms. Linehan based on her disabilities.                                                                                              (*Id*.).

On February 19, 2016, Ms. Linehan filed the instant lawsuit against UTT claiming disability discrimination, sex discrimination and retaliation.

Subsequently, on February 23, 2016, Ms. Linehan was notified that she would be disciplined as a result of the findings from the investigation. (*See* Pl.'s Am. Compl. ¶ 4.76, Doc. No. 3). Some of the disciplinary actions recommended include: serving one full semester on unpaid administrative leave before returning to the faculty, working closely under the supervision of Mr. Stadelmann "to better understand proper academic conduct and to avoid recurrence of inappropriate actions," and to attend training sessions on the topics of gender-based

sexual discrimination, sexual misconduct/harassment, course syllabi, and the Family Educational Rights and Privacy Act. (*Id*. ¶ 4.76).

On March 4, 2016, Ms. Linehan filed her First Amended Complaint, to include the February 23rd disciplinary actions as discriminatory and retaliatory acts for engaging in protected activities. (*Id*. ¶ 4.84).

UTT filed its Partial Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 8) on May 24, 2016, and filed its Motion to Dismiss Unexhausted Claims on September 19, 2016 (Doc. No. 29).

On October 7, 2016, Ms. Linehan submitted a Supplemental Statement of Particulars in Support of Amended EEOC Charge No. 450-2014-02514. (*See* Ex. D, Doc. No. 31-1 at 45). In the supplement, Ms. Linehan states that UTT expanded its initial investigation to include incidents for which Ms. Linehan had not received prior notice, nor was given an opportunity to present evidence in defense of these additional charges. (*Id*. ¶ 2). Ms. Linehan further alleges that the stated reason for placing and keeping her on extended mandatory leave, and the February 23rd, 2016 disciplinary actions were pretexts for sex discrimination and retaliation against her for engaging in the protected activity of reporting unlawful employment discrimination.  (*Id*. ¶¶ 4-5).

To date, Ms. Linehan has not received a Notice of Right to Sue letter regarding Charge II, nor has she received a disposition from the EEOC as to Charge I.

## II.    APPLICABLE LAW

### A.    FRCP 12(b)(1)

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The party asserting that subject matter jurisdiction exists, here Ms. Linehan, must bear the burden of proof by a preponderance of the evidence to survive a

12(b)(1) motion. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. U.S.*, 281 F.3d 158 (5th Cir. 2001) (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977)). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* The court's dismissal of a plaintiff's case because of a lack of subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *See id.*

B.      FRCP 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  In the Fifth Circuit, "a motion to dismiss under [R]ule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).  The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  *See also Spence v. Flagstar Bank, F.S.B.*, 2016 WL 236027, at *2 (N.D. Tex. Jan. 20, 2016) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff")

(citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002)).  In ruling on a Rule 12(b)(6) motion to dismiss, the district court cannot look beyond the complaint.  *Scanlan v. Tex. A & M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003).  However, a court may consider documents attached to a responsive pleading when the documents are referred to in the pleadings and are central to plaintiff's claim.  *Collins*, 224 F.3d at 498.

A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  Thus, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  *Id*. at 563 n.8.

## III.    DISCUSSION

### A.  Disability Discrimination Claims

Ms. Linehan seeks to voluntary dismiss her claim for disability discrimination, without prejudice, to re-allege this claim during discovery. (Doc. No. 31 at 6). UTT does not oppose. (Doc. No. 32 at 5). Accordingly, the Court recommends that Ms. Linehan's disability discrimination claims be **DISMISSED without prejudice**.

Ms. Linehan further seeks leave to file an amended complaint (Ex. A, Doc. No. 31-1 at 2) wherein her claim for disability discrimination is withdrawn. In her response to UTT's first motion to dismiss, Ms. Linehan also sought leave to amend her complaint to set forth specific facts demonstrating that the alleged unlawful discrimination acts occurred within the 300 day limitations period for filing a charge with the EEOC. (Doc. No. 12 at 4-5). UTT has not objected to Ms. Linehan's request for leave to file an amended complaint on either of these grounds. The

Court therefore recommends that Ms. Linehan's request for leave to file an amended complaint (Doc. No. 31) be **GRANTED**.

### B.  TCHRA Claims

UTT first argues that Ms. Linehan's TCHRA claims are barred by the Eleventh Amendment guarantee of sovereign immunity.[2] The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to the suit, immunity is expressly waived, or Congress validly abrogates immunity. *See* U.S. CONST. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53-55 (1996); *Pennhurst State Sch. & Hosp. v. Halderman¸* 465 U.S. 89, 100-02 (1984).

The University of Texas at Tyler is a coeducational institution of higher education within the University of Texas System. TEX. EDUC. CODE ANN. § 76.01. Texas statutes consider "a [public] university system or an institution of higher education" to be a "state agency," TEX. GOV'T CODE § 572.002(10)(B), and the Fifth Circuit has routinely held that public university systems and their component institutions are entitled to assert Eleventh Amendment immunity absent abrogation or waiver. *See Texas ex rel. Bd. Of Regents of Univ. Of Tex. v. Walker*, 142 F.3d 813, 820 n.10 (5th Cir. 1998) ("The parties in this case do not dispute that UTHSC and the Regents of the University of Texas, sued in their official capacities, may invoke the State's Eleventh Amendment immunity; they are "arms" of the state for purposes of the Eleventh Amendment."); *Sullivan v. Univ. of Tex. Health Sci. Ctr. at Houston Dental Branch*, 217 Fed. Appx. 391, 392 (5th Cir. 2007) ("It is undisputed that UTHSC, as an arm of the state, is entitled to Eleventh Amendment immunity absent Congressional abrogation or voluntary waiver."); *United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.,* 544 Fed. Appx. 490 (5th Cir. 2013);

---

[2] UTT argues that Ms. Linehan's ADA claim is barred by Eleventh Amendment immunity as well. However, the Court need not address this issue as it has dismissed Plaintiff's disability discrimination claims.

*see also Pendleton v. Prairie View A&M Univ.*, 121 F.Supp.3d 758, 762-63 (S.D. Tex. 2015) (barring under the Eleventh Amendment plaintiff's Texas Labor Code claim against a Texas A&M University component institution). UTT is a state agency, and therefore is entitled to assert sovereign immunity under the Eleventh Amendment.

Though a state's waiver of sovereign immunity may subject it to a suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. *See Fla. Dept. of Health v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981). The State of Texas has waived its sovereign immunity in *its own state courts* for claims brought under the Texas Labor Code; however, it has not done so specifically in federal court. *See* TEX. LAB. CODE § 21.002(8)(D) (defining "employer" to include state agencies is an express waiver of sovereign immunity); *Shaw v. Tex. Juvenile Justice Dep't.*, No. 4:16-CV-00409, 2016 WL 7336865, at *2-3 (E.D. Tex. Nov. 23, 2016) (dismissing plaintiff's ADA and TCHRA claims under Rule 12(b)(1)), *report and recommendation adopted* Dec. 16, 2016. The Fifth Circuit has also previously upheld the dismissal of TCHRA claims brought against the State in federal court. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002); *Hernandez v. Tex. Dept. of Human Serv's*, 91 Fed. Appx. 934, 935 (5th Cir. 2004) (per curiam) (reversing district court with instructions to dismiss TCHRA claims).

In response to UTT's motion, Ms. Linehan avers that UTT's acceptance of federal funding amounts to a waiver of sovereign immunity. (Doc. No. 12 at 4). However, the Supreme Court has recognized that "mere receipt of federal funds does not establish that a State has consented to suit in federal court." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246-47 (1985). Rather, such a waiver must be expressed in the language of the specific statute as a condition to participation in the federally-funded program. *Id.* at 247. As Texas' general

acceptance of federal funding does not waive its Eleventh Amendment immunity from discrimination suits, UTT's sovereign immunity remains intact.

Accordingly, the Court recommends that UTT's Motion to Dismiss (Doc. No. 8) Ms. Linehan's disability discrimination claims brought under the TCHRA be **DENIED AS MOOT**, as the Court has already dismissed these claims. The Court further recommends that UTT's Motion to Dismiss (Doc. No. 8) all other claims brought under the TCHRA be **GRANTED** for lack of subject matter jurisdiction.

### C. Sex Discrimination Claim in Violation 42 U.S.C. § 2000e (Title VII)

The Court next addresses whether Ms. Linehan's sex discrimination claim pursuant to Title VII of the Civil Rights Act of 1964 should be dismissed for failure to state a claim under Rule 12(b)(6).

Title VII makes it an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). There are essentially two theories of liability for discrimination under Title VII: disparate impact and disparate treatment. Here, Ms. Linehan alleges she was subject to disparate treatment. (Doc. No. 12 at 7). Under this theory, Title VII is violated if the employee can show that the employer intentionally treated the employee unfairly because of race, color, religion, sex, or national origin. *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1523 (5th Cir. 1993).

The initial burden is on a plaintiff to show facts sufficient to warrant recovery. *Armstrong v. City of Dallas*, 997 F.2d 62, 65 (5th Cir. 1993). To succeed, a plaintiff proceeding on a disparate treatment theory of employment discrimination must show both disparate treatment and discriminatory motive. *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir.

1988); *Lee v. Conecuh County Board of Education*, 634 F.2d 959, 962 (5th Cir. 1981). Discriminatory motive or intent may be shown by direct or circumstantial evidence. *Wheeler v. City of Columbus, Miss.*, 686 F.2d 1144, 1150 (5th Cir. 1982). A plaintiff must show that the protected trait—in this case, Ms. Linehan's sex—actually motivated UTT's decision. The protected trait must have actually played a role in the decision-making process and must have had a determinative influence on the outcome. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

UTT argues that to survive a Rule 12(b)(6) motion, Ms. Linehan must allege in her Complaint each element of the *McDonnell Douglas* framework, *i.e.*, a plaintiff must show that: (1) she was a member of the protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) others outside of her protected class and who are similarly situated were treated more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). UTT maintains that placing Ms. Linehan on paid administrative leave did not constitute an adverse employment action to state a Title VII claim. However, the Court finds that UTT's reliance on the *McDonnell Douglas* standard for the purpose of a Rule 12(b)(6) motion is misplaced.

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

The Supreme Court has consistently held that the *McDonnell Douglas* framework is an evidentiary standard, not a pleading requirement. *Id.* at 511 ("This Court has never indicated that

the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *see also Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981). Instead, the ordinary rules for assessing the sufficiency of a complaint pursuant to Rule 8(a)(2) apply. *See id.* ("[U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case."); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

Ms. Linehan has met her burden to state a valid claim of sex discrimination under Title VII and to put UTT on notice of such claims. Ms. Linehan filed a complaint with the EEOC on March 9, 2015, which has since been pending before the Texas Workforce Commission as well. Specifically, Ms. Linehan had pleaded that she did not receive legally required performance evaluations and was denied the opportunity for Post-Tenure Review, which Ms. Linehan observed was given to all similarly-situated male professors. (Pl.'s Am. Compl., ¶ 4.05, Doc. No. 3). Ms. Linehan further asserts that between 2010 through the present date, she has been consistently awarded lower merit bonuses than were awarded male professors within her department at her level. (*Id.*). In particular, Ms. Linehan states that she knows of at least one male Associate Professor, who has similar teaching ratings, less experience, and significantly fewer publications who received an 11% merit increase as compared to Plaintiff who only received a 2% increase. (*Id.*).

Ms. Linehan has validly stated a claim that the investigation launched on June 6, 2014 by Mr. Slann was done in retaliation and as a further act of discrimination. This investigation began

only two days after Ms. Linehan filed a gender discrimination claim with UTT'S HR Department and notified the EEOC of her claims. (*Id*. ¶¶ 4.16, 4.27). Ms. Linehan has shown that this investigation lasted nearly two years, contrary to UTT's own policies and procedures. (*Id*. ¶ 4.35). Ms. Linehan has alleged that other male professors previously accused of sexual harassment have been treated more favorably. (*Id*. ¶ 4.19). The pleadings in this case are sufficient to give UTT more than fair notice of the basis of Ms. Linehan's sex discrimination claim and are sufficient to survive a motion to dismiss. *See Calloway v. Health and Human Serv's. Comm'n*, 6:11CV502, 2012 WL 12884891, at *4 (E.D. Tex. Mar. 29. 2012), *report and recommendation adopted* June 14, 2012.

As to whether Ms. Linehan has alleged an adverse employment action, she need not make a *prima facie* showing of her case under *McDonnell Douglas* to survive a 12(b)(6) motion, and therefore is not required to allege that she suffered an adverse employment action, as argued by UTT. *See Swierkiewicz*, 534 U.S. at 511.

But even if Ms. Linehan was required to allege this element, the Fifth Circuit has recognized that "a significant diminishment of 'material responsibilities,' *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998), or a demotion, *Pegram v. Honeywell, Inc*., 361 F.3d 272, 282 (5th Cir. 2004), also constitutes an adverse employment action under Title VII." *Schirle v. Sokudo USA, LLC*, 484 Fed. Appx. 893, 897 (5th Cir. 2012) (where the Fifth Circuit considered plaintiff's loss of his European sales responsibilities, leaving him only responsible for sales in the United States, a diminishment of material responsibilities significant enough to satisfy the third element of his *prima facie* case of discrimination).

Here, Ms. Linehan has sufficiently pleaded that she has experienced adverse employment actions since being placed on immediate and indefinite paid administrative leave on July 17,

2014. (*Id.* ¶ 4.34); *see Thompson v. City of Waco, Tex.*, 764 F.3d 500, 505 (5th Cir. 2014) (adverse employment actions consist of ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, compensating, transfer, or reassignment). Ms. Linehan claims that the uniquely restrictive terms and delays in the investigation have caused her to suffer what is essentially an academic exile, along with causing damage to her professional reputation. (*Id.* ¶¶ 4.37, 4.38; Doc. No. 12 at 5-6).  Ms. Linehan has been denied access to the university's facilities, has been unable to participate in any summer course programs, has had all research funding cut off, and has been prohibited from seeking Post-Tenure Review. (*Id.* ¶ 4.37; Doc. No. 12 at 5-6). As a result, Ms. Linehan has been unable to research or publish work product for the last two years to show to prospective employers, nor is she allowed to tell prospective employers that she has worked anywhere since 2009. (*Id.* ¶ 4.39). The Court considers these losses to be a significant diminishment of material responsibilities for alleging an adverse employment action.

Accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff, Ms. Linehan has stated a valid claim to survive a 12(b)(6) motion, and the Court accordingly recommends **DENYING** UTT's Motion to Dismiss (Doc. No. 8) as to Ms. Linehan's Title VII sex discrimination claim.

### D.  Retaliation under Title VIII

UTT similarly argues that Ms. Linehan's retaliation claim under 42 U.S.C § 2003e-3(a) claim should be dismissed because Ms. Linehan did not suffer a materially adverse employment action for the purpose of stating a retaliation claim, and because she has suffered no economic harm. (Doc. No. 8 at 10-11).

To prevail on a Title VII retaliation claim, a plaintiff must show that: (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer,

and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). The standard for showing an adverse employment action for a retaliation claim is a lower standard than for a disparate treatment claim. In a retaliation claim, an adverse employment action need not lead to an ultimate employment decision so long as "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011) (applying *Burlington* standard).

As explained above though, it is not required for Ms. Linehan to establish a *prima facie* case to survive a motion to dismiss where the pleadings have sufficiently given fair notice to UTT of the basis of her retaliation claim. *See Calloway*, 2012 WL 12884891, at *4. Ms. Linehan has sufficiently pleaded that UTT retaliated against her for internally complaining to the HR Department and for filing a charge with the EEOC by launching a two-year investigation against her for changing her syllabus. She was then placed on indefinite administrative leave, which resulted in economic damages of over $100,000 in back pay, and denied bonuses and merit increases. (Pl.'s Am. Compl. ¶¶ 4.47, 7.04-7.06, Doc. No. 3). In this case, Ms. Linehan has alleged sufficient facts to show that a reasonable employee would have found UTT's actions to be materially adverse, and that UTT was on notice of her retaliation claim.

The Court therefore recommends **DENYING** UTT's Motion to Dismiss under Rule 12(b)(6) (Doc. No. 8) as to Ms. Linehan's Title VII retaliation claim.

E.  Claims Relating to February 23, 2016 Disciplinary Action

UTT next argues in its Motion to Dismiss Unexhausted Claims (Doc. No. 29) that the Court does not have subject matter jurisdiction over Ms. Linehan's claims relating to the February 23, 2016 disciplinary actions because she has not fully exhausted these claims with the EEOC.[3] UTT avers that the disciplinary actions that arose as a result of the conclusion of UTT's two-year investigation are alleged discrete acts of discrimination, and that Ms. Linehan is "required to exhaust the discipline either through a new or amended charge within 300 days of the date the discipline occurred." (Doc. No. 29 at 5 n.3).  The recommended disciplinary actions include: serving one full semester on unpaid administrative leave before returning to the faculty, working closely under the supervision of Mr. Stadelmann "to better understand proper academic conduct and to avoid recurrence of inappropriate actions," and to attend training sessions on the topics of gender-based sexual discrimination, sexual misconduct/harassment, course syllabi, and the Family Educational Rights and Privacy Act. (Pl.'s Am. Compl. ¶ 4.76).

It is well-settled in the Fifth Circuit that "employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A311 f.supp.2d 573 Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006)).

---

[3] UTT also argues that the disability discrimination claims should also be dismissed for failure to exhaust administrative remedies, as Charge II is still being proceed by the EEOC and Ms. Linehan has not been issued a Notice of Right to Sue for this charge. The Court need not address this issue, as Ms. Linehan has voluntarily dismissed her disability claim. *See supra*, Part III.A, p. 10.

"Nevertheless, competing policies underlie judicial interpretation of the exhaustion requirement." *Id.* "On one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII 'was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship.'" *Id.* (internal citations omitted). "On the other hand, the 'primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims.'" *Id.* (citing *Pacheco,* 448 F.3d at 788–89).

To reconcile these policies, the Fifth Circuit construes an EEOC complaint "broadly but in terms of the administrative EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* The Fifth Circuit conducts a "'fact-intensive analysis' of the administrative charge that looks beyond the four corners of the document to its substance." *Id.* A Title VII lawsuit may therefore include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Id.*

Several district courts in the Eastern District of Texas have applied these principles to either disallow or allow a variety of claims not raised in the EEOC charge. *See, e.g.*, *Harvill v. Westward Commc'ns, LLC*, 311 F.Supp.2d 573, 585 (E.D. Tex. 2004) (refusing to allow a constructive discharge claim that was not asserted in the EEOC charge); *Brooks v. Firestone Polymers, LLC*, 70 F.Supp.3d 816, 841-42 (E.D. Tex. 2014) (plaintiff was foreclosed from pursuing a "failure to promote due to disability" claim where he failed to mention or allude to any facts in the charge that would have put the EEOC on notice of his disability discrimination claim); *see also Jefferson v. Christus St. Joseph Hosp.*, 374 Fed. Appx. 485, 490 (5th Cir. 2010) (affirming district court's ruling that certain claims were unexhausted where plaintiffs failed to

either check the appropriate box on the EEOC form or describe the discriminatory conduct in the charge); *but cf. Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F.Supp.2d 787, 798 (E.D. Tex. 2013) (defendant's motion to dismiss for failure to exhaust claims was denied where allegations of race discrimination in the charge and those in her complaint were generally similar enough to exhaust administrative remedies even though plaintiff's complaint mentioned some incidents not included in her EEOC charge); *Sellers v. BNSF Ry. Co.*, No. 1:11-CV-190, 2013 WL 1181458, at *7-8 (E.D. Tex. Mar. 18, 2013) (alleged discrimination and retaliation in 2008 could reasonably be expected to grow out of plaintiff's allegations regarding discrimination and retaliation brought forth in 2007 where claims involved the same supervisor responding to similar rule violations occurring within a short period of time).

Here, Ms. Linehan's Charge I states the following:

7. As of today, there has been no investigation, hearings, or resolution of the student complaints, despite my repeated requests to be interviewed.

11. UTT's stated reason for my mandatory suspension is the pending investigation into the student complaints. This is pretextual. UTT has taken far longer than what is allowed under UTT's own procedures and has yet to provide me with any update on the statute of the investigation.

12. It is my belief and contention that UTT is deliberately delaying the investigation to prevent me from returning to work.

13. Ironically, even though the university has not completed its investigation into these questionable student complaints, UTT has already concluded that my claims of discrimination and harassment are without merit.

16. I believe that UTT's stated reason for placing and keeping me on an extended mandatory suspension is a pretext for continuing sexual discrimination against me and in retaliation for my protected activity of reporting a pattern of unlawful sexual discrimination in violation of Title VII and Chapter 21 of the Texas Labor Code.

(Ex. A, Doc. No. 31-1 at 37-38). In addition, Ms. Linehan checked the boxes next to sex discrimination and retaliation. She listed July 17, 2014 as the earliest date the discrimination took place, and checked the box for "continuing action." (*Id.*).

Furthermore, on October 7, 2016, Ms. Linehan amended her Charge I to include the February 23rd disciplinary actions in her Supplemental Statement of Particulars in Support of Amended EEOC Charge No. 450-2014-02514. (*See* Ex. D, Doc. No. 31-1 at 45). In the supplement, Ms. Linehan states that UTT expanded its initial investigation to include incidents for which she had not received prior notice, nor was given an opportunity to present evidence in defense of these additional charges. (*Id.* ¶ 2). Ms. Linehan mentions that UTT's findings and conclusions from the expanded investigation resulted in a number of discipline measures, and that

> UTT's stated reason for placing and keeping me on extended mandatory leave –
> and this discipline – is a pretext for sex discrimination and retaliation against me
> for my protected activity of reporting a pattern of unlawful sex discrimination in
> violation of Title VII and Chapter 21 of the Texas Labor Code.

(*Id.* ¶¶ 4-5).

UTT's argument that the recommendation of disciplinary actions is a discrete act for which Ms. Linehan is required to file a separate, third charge is unavailing. Like in *Gallentine* and *Sellers*, the civil complaint filed in this court encompasses discrimination "like or related to allegation[s] contained in the [EEOC] charge and grow[sic] out of such allegations during the pendency of the case before the Commission." *See McClain*, 519 F.3d at 273. Ms. Linehan has already sought to amend Charge I to include the recommendation of disciplinary actions. Charge I and the Supplement repeatedly note the ongoing investigations conducted by UTT, and the paid administrative leave status on which Ms. Linehan was placed for over two years.  The February 23rd disciplinary actions directly resulted from the completion of the investigation, and modified

22

the terms of Ms. Linehan's leave status.  Ms. Linehan's claims relating to the disciplinary actions can therefore reasonably be expected to grow out of her previously filed charges, and the EEOC has sufficient notice of the alleged ongoing discrimination.

The Court also finds *Everett v. Central Miss., Inc. Head Start Program* instructive in this case. 444 Fed. Appx. 38, 45 (5th Cir. 2011). In *Everett*, the Court considered an employee's termination that occurred several months after she filed an EEOC charge alleging retaliation. *Id*. The court held that the employee had exhausted her administrative remedies with respect to the termination, despite not amending her EEOC charge. *Id*. The Fifth Circuit based its decision in part on the fact that the EEOC did not issue a right-to-sue letter until four months after the termination, and that the substance of the retaliation claim had not changed other than the addition of the later-occurring adverse employment action. *Id*. The Court also considered defendant's concession that the EEOC could have learned of plaintiff's termination in the course of investigating the initial retaliation charge.  *Id*.; *see also Sellers*, 2013 WL 1181458, at *8.

Here, the EEOC investigation into Charge I is currently pending. Not only can the EEOC learn of the February 23rd disciplinary actions in the course of investigating the filed charges, but Ms. Linehan has also filed a supplement with the EEOC, amending Charge I to include these actions as further support for her claims of ongoing discrimination. Like in *Everett*, the substance of Ms. Linehan's retaliation claim has not changed other than the addition of the later-occurring recommendation for disciplinary actions.

The parties argue at length as to whether the Court may exercise ancillary jurisdiction over the disciplinary action claims under a narrow exception carved out by the Fifth Circuit in *Gupta v. East Tex. State Univ.*, which allows a plaintiff to pursue a retaliation claim in court growing out of an earlier charge without having to exhaust administrative remedies. *See Gupta v.*

*East Tex. State Univ.*, 654 F.2d 411 (5th Cir. 1981). However, the Court need not reach the issue of whether the *Gupta* exception applies, as it is clear from multiple Fifth Circuit and Eastern District of Texas cases that the facts of this case support a finding that Ms. Linehan is not required to file a separate, third charge relating to the disciplinary actions because the EEOC can reasonably expect these claims to grow out of her previously filed charges.

Accordingly, the Court recommends **DENYING** UTT's Motion to Dismiss Unexhausted Claims (Doc. No. 29) and finds that it has subject matter jurisdiction over Ms. Linehan's claims relating to the February 23rd disciplinary actions.

## IV.     CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** (1) that Plaintiff's disability discrimination claims be **DISMISSED without prejudice**, (2) that Plaintiff's Motion for Leave to Amend be **GRANTED** (Doc. No. 31), (3) that Defendant's Partial Motion to Dismiss Plaintiff's First Amended Complaint be **GRANTED** as to any claims brought under the TCHRA and **DENIED** as to Plaintiff's VII claims (Doc. No. 8), and (4) that Defendant's Motion to Dismiss Unexhausted Claims be **DENIED** (Doc. No. 29).

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b). A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from de novo review by the District Judge of those findings, conclusions, and recommendations, and except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 19th day of January, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE