IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MARY LINEHAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.6:16-CV-00066 |
| | § | |
| UNIVERSITY OF TEXAS AT TYLER | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF MARY LINEHAN

1. My name is Mary Linehan. I have personal knowledge of the matters contained in this Declaration and am fully competent to make this Declaration.

2. I was hired as a tenured professor by the University of Texas at Tyler ("UTT") to serve in the University's history department in 2009.

3. Prior to working at UTT, I had worked for 9 other universities and during my career I successfully won 5 all-campus teaching awards. As a specialist in women's history, I am committed to the promotion of Title IX and Title VII.

4. In 1997, I filed suit against my employer, King's College, for gender discrimination and successfully recovered back pay, compensatory damages, and legal fees.

5. In 2003, I was falsely accused of sexual harassment by Spalding University. I filed suit to defend my reputation. As a result of this litigation, I received a cash settlement and the charge of harassment was expunged from my employment record. As a further condition of settlement, the University President and In-house Counsel were required to write letters of apology to me.

6. From my date of hire in 2009 until approximately April, 2014, I consistently received superior performance evaluations at UTT for my teaching and contributions to the Department.

EXHIBIT A

7. My students UTT gave me the highest recorded teaching evaluations in the department.

8. On or about May 2012, Dean Martin Slann ("Slann") accused me of failing to hold regular office hours. In response to this accusation, I demonstrated to Dean Slann through my students that the accusation was false and that I had consistently kept regular business hours.

9. At no time was I informed that I could not use Facebook to communicate with students. Students frequently offered to "friend" me and I accepted their offers.

10. I created a Facebook page entitled Historians of Tyler, otherwise referred to as "Hotties". The purpose of this Facebook page was to maintain contact with alumni who were interested in history and network them with our majors and to promote history in our community. This Facebook page was common knowledge to the Department Chair and Defendant's English department, who copied the same. The University President praised this Facebook page.

11. In Spring, 2014, I taught a graduate course entitled "History 5388." I have taught this course before without any disruption or complaint from any student.

12. Several of the students in this class had attended previous classes with me. I frequently have repeat students in my classes.

13. I observed that some of the students in my 2014 Spring Semester class were not doing the required assignments. One student plagiarized assignments. Consequently they were not meeting expectations and I became concerned that they might fail the course.

14. I reported my observations and concerns to my Department Chair, Marcus Stadelmann ("Stadelmann").

15. As a solution to these concerns, I proposed to change the weight given to the midterm and final exam so that those students who had not obtained a satisfactory grade in the midterm could still obtain a passing grade for the course. Stadelmann did not oppose this suggestion.

16. Prior to implementing this proposed change of re-weighing the grades, I discussed the same proposal idea with the class, who agreed with the change in the weight to be given to the final grade.

17. In March, 2014, I received an email from Stadelmann confirming that certain students had complained that I had changed the course in mid-semester.

18. I became immediately concerned and offered to make myself available to meet with Slann and Stadelmann to understand the complaints and how to address them.

19. Neither Slann nor Stadelmann met with me to discuss the nature of the complaints or hear my side of the story.

20. I attended Slann's deposition wherein he admitted that he first had learned of certain the students' complaints against me in March, 2014. Slann never contacted me to discuss complaints.

21. I also attended Stadelmann's deposition wherein he testified that the only contact that he had with me during the semester was by email. I believe that this was the email in which he advised me not to change back to the original syllabus, but to stick with the new grading procedure that I recently implemented.

22. The four students who complained of sexual misconduct were all students who were struggling in my class. The one and only comment that I recall making was the statement "slutty girl" which I addressed to a student on the first day of class in January, 2014. The student wrote to Stadelmann that she did not take offense to the comment. This student frequently used this term as well as "unwed slut" to describe herself since she began attending my class in 2012. By using the term "slutty girl" on that one occasion I was trying to correct her behavior.

23. On June 4, 2014, I filed a complaint of gender bias against Slann, Ken Wink ("Wink") and Stadelmann. I also advised University that I had notified the EEOC of my complaint of gender discrimination.

24. On June 6, 2014, Slann announced an investigation into me regarding complaints of academic misconduct.

Declaration of Mary Linehan
Page 3

25. On that same day, June 6, 2014, Ona Tolliver ("Tolliver"), Dean of Students and Assistant Vice- President of Student Affairs, presented me with her summary of four student complaints about me regarding claims of sexual harassment.

26. On July 17, 2014, during the summer break, the Interim Provost placed me on an indefinite leave of absence with pay pending the investigations that had been brought against me.

27. Under the terms of the mandatory absence, I was not to have any contact or access to the University, students, faculty, campus, or my research. I was also prohibited from representing that I worked at UTT. I was required to be available to the university during all business hours and, at times, without compensation. I could not leave Tyler without special permission

28. UTT's Handbook of Procedures (HOP) provides that a formal complaint requires the complainant to specify details of the conduct in question, the location where the alleged conduct occurred, the names of any witnesses and any resolution sought.

29. Section 2.4.1 of Defendant's HOP adopts the same definition of harassment that is defined by the state and federal statutes.

30. I remained on paid leave pending an investigation of the alleged academic and sexual misconduct from July 17, 2014 until May 31, 2016.

31. Tolliver's report was issued on December 18, 2015 during the Christmas holiday and refers to events that occurred in 2010 and 2011.

32. The one and only interview that I had investigation was on May 8, 2015.

33. Tolliver further concluded that students felt intimidated and in fear of retaliation. These again are based on isolated incidents that occurred in 2010-11. These events were not made known to me until September 2016. I was never allowed to respond to this.

34. A review of the grades that I have awarded throughout my employment with UTT will show that there is no pattern to suggest any type of disparate treatment in grading the

Declaration of Mary Linehan
Page 4

students who attended my class. In fact, men perform better in my classes than in the university as a whole.

35. According to the UTT policy handbook, such complaints are supposed to be investigated and concluded within 60 days. Section 2 (F) of the HOP provides that the investigation of a complaint will be concluded as soon as possible after receipt of the written complaint. In investigations exceeding 60 days, a justification for the delay will be presented to and reviewed by the vice president overseeing the investigative office. The complainants, accused individual and supervisor should be provided updates on the progress of the investigation and issuance of the report.

36. I received no notice or update on the progress of the investigation and had no knowledge that events dating back to 2010 and 2011 were the subject of the investigation of the complaint against me. I was not given the opportunity to question these witnesses or present exculpatory responses to their statements.

37. I repeatedly offered to be interviewed during the summer and early fall of 2014 and also made myself available to be interviewed in the spring of 2015.

38. The investigation of my complaint against 3 men for discriminatory behavior spanning 5 years took 3 months to investigate and concluded with a finding of no merit.

39. The investigation into complaints against me based upon an isolated comment and events in the 2014 Spring Semester lasted 85 weeks (20 months).

40. This lengthy suspension without information regarding the status of the investigations has caused me to lose teaching opportunities over the summer upon which I relied for additional income. I was also denied the opportunity for reviews which has affected my career as a professor. I have also developed physical symptoms from the emotional unrest caused by the University's treatment. I was also present during Stadelmann's deposition wherein he conceded that being removed from the faculty for a total of 32 months would obviously be hurtful to a professor's career.

41. In addition to the 32 months of banishment, I received additional financial, professionally humiliating, and tenure-threatening punishments from Provost Amir Mirmiran. The university did not follow its own procedures in administering this discipline.

42. According the Regents' Rules for the UT System, all such punishment must come from the university president after the Provost's recommendation and after full hearing by a faculty panel. As a result of this violation, I was never allowed certain hearings or to grieve this punishment which, effectively, takes away my tenure in violation of all academic policy.

43. With regard to the allegation that I disclosed grades of students in violation of FERPA, that is not true. I only mentioned a student's grade after the student had publicly disclosed his or her grade.

44. At the FERPA training that I was required to attend in October 2016, the instructor provided by UTT could not verify whether the disclosure student's grade following that student's public disclosure of the same was a violation of FERPA.

45. As a result of Plaintiff's mandatory leave of absence and its conditions, I was not allowed to teach for 2.5 academic years and lost the opportunity to teach summer courses upon which I relied for additional income.

46. As a further result, I received no performance appraisal for four academic years (2013, 2014, 2015, and 2016). The failure to receive appraisals has severely affected my ability to advance within the university. The combined impact of these events have caused me to suffer severe emotional unrest resulting in a relapse of my chronic medical condition.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this __7__ day of September 2018

*Mary Linehan*
MARY LINEHAN