# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| MARY LINEHAN, § | |
| § | |
| § | CIVIL ACTION NO. 6:16-CV-00066-RWS |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| UNIVERSITY OF TEXAS AT TYLER, § | |
| § | |
| § | |
| Defendant. | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 54.) Plaintiff has filed a Response (Doc. No. 64), Defendant filed a Reply, (Doc. No. 65) and Plaintiff filed a Sur-Reply. (Doc. No. 66.) Having fully considered the parties' arguments and for the reasons set forth herein, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. No. 54) be **GRANTED**.

## BACKGROUND

Dr. Linehan filed a discrimination case arising out of allegations of ongoing sex discrimination in violation of 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964) and retaliation under Title VII. (Doc. No. 45.) Dr. Linehan has been a tenured Associate Professor at University of Texas Tyler ("UTT") since 2009. (Doc. No. 64 at 4.) She teaches U.S. History with a specialization in the role of women in history. *Id.* at 5. From 2009 through 2014, Dr. Linehan taught during every academic year and summer. (Doc. No. 45 at ¶ 4.02). During this

1

time, Dr. Linehan received favorable performance appraisals and evaluations. (Doc. No. 64 at 5).

In March 2014, UTT received complaints from several students in Dr. Linehan's class. (Doc. No. 54 at 6.) Five students were interviewed between May 5–7, 2014. (Doc. No. 54 at 7.) On May 5, 2014, UTT began two investigations, one in accordance with Title IX done by the Dean of Students and one on academic misconduct done by the Associate Dean of College and Arts & Sciences. *Id.* at 7. On May 13, 2014, Dr. Linehan received notice that she was accused of misconduct, including sexual harassment, by students and UTT was investigating these claims. *Id.* That same day, Dr. Linehan reached out to her supervisor, Marcus Stadelmann, for counsel and advice, but he refused to respond to her. (Doc. No. 45 at ¶ 4.14.) The following day, Mr. Stadelmann canceled and reassigned Dr. Linehan's regularly scheduled summer courses, and on May 20, 2014, UTT cancelled two of Dr. Linehan's three fall courses. *Id.* at ¶¶ 4.14, 4.15.

On June 4, 2014, Dr. Linehan filed a complaint alleging gender discrimination with UTT's HR Department and notified the EEOC about filing a claim for gender discrimination. (Doc. No. 64 at 7; Doc. No. 45 at ¶ 4.17). At UTT's request, Dr. Linehan provided 125 pages of evidence supporting her claims. (Doc. No. 45 at ¶ 4.16). On June 6, 2014, Dr. Linehan was told of the specific allegations against her and who had made them. (Doc. No. 64 at 7–8.) On July 17, 2014, Dr. Linehan was placed on an indefinite leave of absence with pay. *Id.* UTT concluded its investigation regarding Dr. Linehan's charge of gender discrimination on September 5, 2014 and found no evidence of gender discrimination. (Doc. No. 54-3 at 3–21.)

On September 25, 2014, Dr. Linehan informed UTT human resources ("HR") that she was having medical issues. *Id.* Dr. Linehan notified HR that she would be unable to work in the

second semester and requested sick days and short-term disability. *Id.* at 23–24. She sought and received intermittent FMLA in October 2014 and from December 2015 until March 2015. *Id.* at 26–27. Dr. Linehan returned from FMLA leave in April 2015 and was interviewed in May 2015. (Doc. No. 54 at 9.) On December 18, 2015, two reports were issued concluding: 1) Dr. Linehan engaged in gender discrimination and created a hostile environment for male students citing events from 2010–11 and 2014 and 2) Dr. Linehan had violated academic policies and procedures. *Id.* at 8 (Doc. No. 54-1 at 36; Doc. No. 54-4 at 2). Plaintiff filed a complaint in this case on February 19, 2016. (Doc. No. 45 at ¶ 4.76.) On February 23, 2016, reprimand was given. *Id.* at ¶ 4.77. Plaintiff remained on paid leave until May 31, 2016.[1] (Doc. No. 45 at ¶ 1.06).

UTT has a policy handbook for handling complaints and investigations. (Doc. No. 54 at 8.) The handbook indicates that complaints should be investigated and concluded within 60 days, and if it exceeds 60 days, justification for the delay should be presented to and reviewed by the vice president overseeing the investigative office. *Id.* The individual and the person's supervisor should be provided updates on the progress of the investigation and the issuance of the report. *Id.*

## **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if a reasonable jury

---

[1] Dr. Linehan's brief indicates she was on leave until May 31, 2015 and cites Dr. Linehan's Declaration. (Doc. No. 64 at 7.) However, upon review, Dr. Linehan's Declaration indicates her leave was until May 31, 2016. (Doc. 64-1 at 1 (Linehan Decl.).)

could return a verdict for the nonmoving party. *Davis v. Ford Bend County*, 765 F.3d 480, 484 (5th Cir. 2014). The party seeking summary judgment bears the initial responsibility to demonstrate there is no genuine issue of material fact. *Id.* (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* (citing *Celotex*, 477 U.S. at 324). The Court must consider summary judgment proof in light most favorable to the nonmovant. *Id.* However, "[a] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Id.* (internal quotations omitted).

## DISCUSSION

**I.  Discrimination Claim**

Dr. Linehan does not respond to UTT contentions that it is entitled to summary judgment on her discrimination claim in her response and conceded at oral argument that she does not oppose summary judgment on her discrimination claim. (Doc. No. 64; Doc. No. 66.) Her discrimination claim should therefore be **DISMISSED**.

**II.  Retaliation Claim**

"Title VII prohibits an employer from discriminating against an employee because she made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." *Smith v. Board of Supervisors of Southern U.*, 656 Fed. Appx. 30, 32 (5th Cir. 2016) (internal quotations omitted). Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *Id.* (citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996)). Under this framework, a plaintiff has the initial burden of establishing a *prima facie* case of retaliation. *Id.* Then, the burden shifts to the employer to introduce evidence of "a legitimate,

4

nonretaliatory reason for the adverse employment action." *Id.* If the employer meets this burden, the "plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real . . . retaliatory purpose." *Id.* (quoting *McCoy v. City of Shreveport*, 392 F.3d 551, 557 (5th Cir. 2007)).

Dr. Linehan argues that she was retaliated against because (1) she was placed on indefinite administrative leave from July 2014 until May 2016 after filing a gender discrimination charge; (2) UTT decided to extend the investigation past the sixty day period the policy proscribes by looking into Dr. Linehan's gender discrimination claims first and failing to investigate the claims against her; and (3) the investigation's conclusions show the entire investigation could have been completed within sixty days, and UTT then expanded this investigation into isolated incidents that had occurred in 2010–11 without notice to Dr. Linehan. (Doc. No. 45 at ¶¶ 4.27–4.36; 4.40–4.41.)

### A. Prima Facie Case

A *prima facie* case for retaliation must show a plaintiff (1) engaged in an activity that Title VII protects; (2) was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *LeMaire v. Louisiana Dept. of Transp. & Develop.*, 480 F.3d 383, 388 (5th Cir. 2007) (citing *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir.2005)). UTT argues that Dr. Linehan's claims fail as a matter of law because she cannot show the requisite causation between her protected activity and the challenged actions. (Doc. No. 54 at 18.)

UTT claims that Dr. Linehan did not establish a *prima facie* case because she did not establish the requisite causal connection from her activity to any adverse employment action. *Id.* at 19. UTT points to the timing of the protected activity and argues Dr. Linehan only reported

5

gender discrimination after the start of an investigation regarding Dr. Linehan's prior conduct. *Id.* Dr. Linehan argues the adverse employment action took place six weeks after her protected action when she was placed on open-ended, highly restrictive administrative leave. (Doc. No. 64 at 12.) Dr. Linehan maintains that "Defendant's total lack of action throughout the remaining two months of the Spring semester" and her suspension after she filed a claim establishes a causal connection between her actions and the adverse employment action. *Id.* at 14.

Three factors may be helpful in determining whether a causal link has been demonstrated at the *prima facie* case stage: (1) the plaintiff's past disciplinary record; (2) whether the employer followed its typical policies and procedures when taking adverse action against the employee; and (3) the temporal relationship between the employee's conduct and the adverse act. *Green v. Trimac Transportation S., Inc.*, No. 1:10-CV-444, 2012 WL 12893293, at *17 (E.D. Tex. Sept. 12, 2012), *aff'd sub nom. Green v. Trimac Transp., Inc.*, 546 F. Appx. 333 (5th Cir. 2013). There is an inference of causation when an adverse employment action occurs in close temporal proximity to the protected conduct. *Richard v. Cingular Wireless, LLC*, 233 Fed. Appx. 334, 338 (5th Cir. 2007). A plaintiff need not prove her protected activity was the sole factor motivating an employer's challenged decision. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job action began well before the plaintiff had ever engaged in any protected activity an inference of retaliation does not arise." *Finch v. Texas Health & Human Serv. Comm'n*, No. H-13-3716, 2015 WL 5674834, at *6 (S.D. Tex. Sept. 25, 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). A "[p]laintiff cannot use the threat of a discrimination lawsuit to immunize [her]self from the reasonable and foreseeable consequences of [her] misconduct[.]" *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 519 (S.D.

N.Y. 2010); *see also Crisp v. Sears Roebuck & Co.*, No. SA-13-CA-962, 2015 WL 12977378, at *14 (W.D. Tex. Mar. 4, 2015) ("[P]laintiff's protected activity after his misconduct . . . does not establish a causal connection between the protected activity and the termination.").

In this case, Dr. Linehan was placed on administrative leave five weeks after she submitted her complaint alleging gender discrimination. (Doc. No. 64 at 7). However, the chronological order here was not merely the filing of a complaint followed by an alleged retaliatory action. UTT's exhibits show that a group of 5–7 students reached out to Dr. Linehan's department chair ("Stadelmann") and the head of her department ("Slann") at the end of March. (Doc. No. 54-1 at 104 (Tolliver Report and Exhibits); Doc. No. 54-11 at 7–8 ("Stadelmann Dep." at 74–75).) The students complained about issues with syllabus changes and grading issues, and one student complained about being called a name by Dr. Linehan. (Stadelmann Dep. at 74.) Stadelmann arranged interviews for the students. (Doc. No. 54-1 at 107.) Stadelmann also reached out to Dr. Linehan to tell her of the complaints of her grading issues and the syllabus changes. (Stadelmann Dep. at 76.) The department began to watch Dr. Linehan's classes and tracked the students' grades to make sure they were not retaliated against. *Id.* at 77–78. Stadelmann, Slann, and the associate dean met with a group of students to discuss the issues. *Id.* at 79. A further complaint was made to Stadelmann on April 21, 2014 about potential academic misconduct of Dr. Linehan. (Doc. No. 54-1 at 105.) Stadelmann notified the Dean of Students on April 24, 2014 of the Title IX concerns. *Id.* at 1 (Tolliver Decl.). The Dean interviewed the students personally from May 5–7, 2014. *Id.* After these interviews, UTT determined there may be evidence of misconduct and on May 13, 2014 sent Dr. Linehan a letter about the sexual harassment complaints. (Doc. No. 54-1 at 4.). On May 14, 2014, UTT cancelled Dr. Linehan's summer courses. (Doc. No. 54-8 at 9 (Linehan Complaints).) As the

7

investigation continued, in July 2014, in advance of the fall semester, Dr. Linehan was placed on formal administrative leave to insulate students from possible retaliation by Dr. Linehan. (Doc. No. 54-2, at ¶ 3 (Sherman Decl.).)

The evidence in the record establishes a gradual adverse employment action. *See Slattery*, 248 F.3d at 95 (finding the complaint, placement on probation, and firing was due to 'an extensive period of progressive discipline"). Dr. Linehan has failed to show any evidence that the adverse employment action is connected to her complaint besides the closeness in time. She argues that UTT's lack of action during the last two months of the spring semester is evidence of causation. However, the evidence cited above clearly contradicts the assertion that UTT was inactive. For example, notice was given that three UTT Tyler officials met with students about their complaints in April and Stadelman advised the Dean of Students about Title IX concerns on April 21, 2014. In early May, the Dean personally interviewed students about their complaints. Therefore, viewing the evidence in the light most favorable to Dr. Linehan, temporal proximity is the sole evidence she can point to as evidence of causation. However, such evidence alone is not enough to establish causal connection. *Finch*, 2015 WL 5674834 at *6. Therefore, Dr. Linehan has failed to establish a *prima facie* case of retaliation, and the Court recommends that summary judgment be **GRANTED**.

### B. Non-Discriminatory and Non-Retaliatory Reasons for UTT's Actions

Even if Dr. Linehan established a *prima facie* case, UTT may articulate a legitimate, nondiscriminatory and nonretaliatory reason for its employment action. *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). The defendant's "burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* If an employer shows a reason which, taken as true, permits a conclusion there was a nondiscriminatory reason for the

adverse action, the employer has satisfied the burden of production. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d. 394 (5th Cir. 1995). "The employer's stated legitimate reason must be reasonably articulated and nondiscriminatory, but does not have to be a reason that the judge or jurors would act on or approve." *Evans v. Texas Dept. of Transp.*, 547 F.Supp.2d 626, 645 (E.D. Tex. 2007). If the defendant shows a legitimate, nonretaliatory reason, the plaintiff must show by a preponderance of the evidence that this reason was pretextual. *Smith*, 656 Fed. Appx. at 32. A plaintiff must not merely show that the proffered reason is false, but must also show that there is evidence that the defendant's actions were meant to retaliate against the plaintiff. *See Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 371 (5th Cir. 1997).

UTT argues it has legitimate, non-discriminatory and non-retaliatory reasons for its actions. UTT states that Dr. Linehan was placed on temporary leave for the safe, orderly, and discrimination and retaliation free educational environment for its students while it investigated the allegations against Dr. Linehan. (Doc. No. 54 at 25.) UTT notes that it had three investigations occurring at the same time that aided in time delays. *Id.* at 25–26. UTT states the investigation was prolonged because it first needed to look into Dr. Linehan's gender discrimination complaint because the outcome could impact the investigation about Dr. Linehan's potential academic misconduct. *Id.* at 26. The investigation was further prolonged due to Dr. Linehan's FMLA leave and medical issues, and she was only able to be interviewed in May 2015. *Id.* The investigators then reviewed and re-reviewed the reports and issued discipline in 2016 relying on the evidence, reports, and responses. *Id.*

Dr. Linehan argues the stated reasons for the length of the investigation have credibility issues.[2] (Doc. No. 64 at 14.) Dr. Linehan notes that she was allowed to teach for two months of the investigation. *Id.* She was only placed on leave once she made her discrimination complaint. *Id.* She states the "suggestion that [she] proposed a risk to students and the academic environment is nonsense." *Id.* at 15. Dr. Linehan argues that the evidence seen in the light most favorable to her establishes summary judgment is not appropriate because UTT has not shown a legally sufficient business reason to place her on leave. *Id.* at 14–15. Dr. Linehan further alleges that the conclusions of the report are evidence that this was retaliation for her gender discrimination claim. *Id.* at 19–22. She states that the "questionable evidence upon which [UTT] has relied to justify the disciplinary action [shows] there is sufficient evidence to suggest that [UTT]'s actions were retaliatory." *Id.* at 21.

UTT argues it placed Dr. Linehan on administrative leave in July "in order to provide a safe, orderly, and discrimination and retaliation free educational environment for students[.]" (Doc. No. 64-2 at ¶ 3.) The evidence shows that students feared retaliation for their complaints. (Doc. 54-1 at 57) (noting the first complainant submitted an anonymous letter for fear of relation and multiple witnesses stated they would not return to UTT if Dr. Linehan was still employed at UTT). The original complainant indicated that "[t]he largest concern is that Dr. Linehan will retaliate against those [students] who do speak" against Dr. Linehan's conduct. *Id.* at 106. Further, there is evidence that Dr. Linehan retaliated against students during her course. *Id.* at 105 ("[I]t is my opinion that Dr. Linehan has been targeting one single student [] on Blackboard

---

[2] Throughout Dr. Linehan's brief, she refers to the adverse employment action as "termination." (Doc. No. 64) There is no evidence UTT terminated Dr. Linehan as a result of this investigation. The Court therefore assumes "termination" refers to the extended leave and investigation.

and in grading her assignments ever since she has been defending [], a fellow student."). This evidence supports UTT's stated reason of providing a safe, orderly, and discrimination and retaliation free environment.

Dr. Linehan argues that UTT's claimed reason for placing her on administrative leave of student safety and maintaining a healthy academic environment is pretextual and not credible because UTT failed to take action in the remaining two months of the Spring semester. (Doc. No. 64 at 14.) Dr. Linehan maintains that the mandatory leave was only imposed after she filed her complaint for discrimination. *Id.* However, as stated above, the evidence shows investigative activity in the March to May timespan. The department was looking into the students' claims in March and April, and notified the Dean of Students with its fears in April. (Doc. No. 54-1 at 104; Stadelmann Dep. at 74–75.) The Dean then spoke to each of the students in May. (Doc. No. 54-1 at 1.) As both the department and the Dean of Students investigated these claims, UTT determined there may be retaliation against students and cancelled Dr. Linehan's summer courses. (Doc. No. 54-8 at 9.) In July 2014, Dr. Linehan was placed on formal administrative leave to insulate students from Dr. Linehan while UTT "investigated the serious allegations against Dr. Linehan." (Doc. No. 54-2, at ¶ 3.) Despite Dr. Linehan's claims, there had been an ongoing investigation in the Spring. Considering the evidence in the light most favorable to Plaintiff, the Court is left with simply evidence of chronological order. In other words, Dr. Linehan filed her complaint and then she was placed on leave. But this alone does not constitute evidence that UTT's proffered reason for placing Dr. Linehan on leave in July, that the university required additional time to investigate Dr. Linehan's charges and the students' allegations, is false or meant to retaliate against Dr. Linehan.

In addition, although Dr. Linehan characterizes her placement on leave in July as a significant change in her status, the evidence contradicts that assertion. In May 2014, UTT notified Dr. Linehan that she would not be teaching summer classes due to the investigation. (Doc. No. 54-8, at 9.) Although Dr. Linehan charged UTT with gender discrimination prior to the July administrative leave, she was effectively on leave for the summer, and the new administrative leave was continued from the first leave. Further, UTT had been investigating since May, and had interviewed five claimants and three witnesses before Dr. Linehan was placed on indefinite leave. (Doc. No. 54-1 at 39.) The school was working to confirm the students' complaints. (Doc. No. 54-1, at 23–34.) Then, Dr. Linehan filed her charge and UTT decided to look into her charges first to determine if her department should be investigating her potential academic misconduct. (Doc. No. 54 at 26.) The acting Provost decided "in advance of the Fall 2014 semester [] to place Dr. Linehan on paid administrative leave pending the outcome of [the] investigations[.]" (Doc. No. 54-2.) The evidence shows that this was not a sudden decision or a significant status change, but a decision made based on the progression of the investigations.

Dr. Linehan also complains that the length of the investigation was retaliatory and could have been completed within 60 days. (Doc. No. 64 at 14.) UTT states that Dr. Linehan's gender discrimination was investigated first so UTT could make sure the people who potentially discriminated against Dr. Linehan did not investigate her potential academic misconduct. (Doc. No. 54-1 at 2, ¶ 8.) This investigation was conducted from June 2014 until September 2014. (Doc. No. 54-3 at 3–21.) UTT tried to interview Dr. Linehan after the close of this investigation, but believed Dr. Linehan was on leave from October 2014 until December 2014. (Doc. No. 54-3 at 26–27.) In reality, Dr. Linehan was on leave for a portion of October and from December

2014 until March 2015. *Id.* UTT indicated it needed to interview her due to the charges against her once she returned from FMLA. *Id.* Once she was able to return, Dr. Linehan was interviewed in May 2015. *Id.* UTT's investigators then had to "review and rereview" all its documents and draft reports along with their "primary job responsibilities." (Doc. No. 54-3 at 3, ¶ 10; Doc. No. 54-4 at 1, ¶ 4.) UTT published its findings in 2016 based on its review of all the evidence, reports, and responses and concluded Dr. Linehan violated University policies. (Doc. No. 54-3 at 2, ¶ 6; Doc. No. 54-4 at 1, ¶ 3.) The Court acknowledges that the investigation and therefore Dr. Linehan's leave seems lengthy and that the length of the investigation seemingly violates UTT policy. However, it is not the Court's province to question such deficiencies when evaluating whether a defendant has stated non-discriminatory and non-retaliatory reasons for an employment action. UTT has articulated reasonable and legitimate reasons for the delays based on the nature and complexity of the three investigations. Dr. Linehan's complaints about the length of the investigation, how it was conducted, and the violations of university policy are insufficient to raise a genuine issue of fact as to the pretextual nature of the stated reasons. *Smith*, 656 Fed. Appx. at 32 (stating a plaintiff failed to show retaliation because the "evidence [] consists largely of speculation and conclusory statements.")

In addition, Dr. Linehan argues that the investigation was expanded to incidents outside the initial investigation arising in 2010–11 without notice. (Doc. No. 64 at 8.) However, UTT policies state that the Title IX Coordinator should "identify[] and address[] any patterns or systemic problems" while overseeing sexual harassment complaints. (Doc. No. 54-1 at 15–16.) Although Dr. Linehan argues the incidents in 2010–11 do not establish a pattern of systemic problems, the coordinator is charged with looking for patterns. Nothing in the record before the

Court indicates that it is inappropriate for a Title IX coordinator to "expand" an investigation in the manner it was done here.

Additionally, Dr. Linehan points to UTT's failure to follow its policy for a sixty day investigation and its policy to keep her appraised of what was going on in the investigation. (Doc. No. 66 at 4–5.) However, "[a] defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other [] employees because Title VII does not protect employees from arbitrary employment practices of their employer, only their discriminatory impact." *Turner v. Baylor Richardson Medical Cntr.*, 476 F.3d 337, 346 (5th Cir. 2007) (quoting *Upshaw v. Dallas Heart Group*, 961 F.Supp.997, 1002 (N.D. Tex. 1997)). Here, although UTT may have failed to follow its own policies, Dr. Linehan fails to show that UTT applied the policies differently with similarly situated people. *Id.* As discussed above, UTT has explained why the investigation surpassed the sixty day period. Further, even if UTT's polices required Dr. Linehan to be informed about the status of the investigation, there is no evidence this failure was based on discriminatory animus. Dr. Linehan has failed to point to any evidence this was discriminatory besides the timeline itself. In sum, Dr. Linehan has not identified evidence showing this reason was pretextual in UTT's decision to place Dr. Linehan on administrative leave.

Finally, Dr. Linehan also argues that the conclusions of the investigation amount to evidence that the real reason for the length of the investigation was retaliatory. (Doc. No. 64 at 20–22.) She maintains there was no showing she violated Title VII or Title IX, and all evidence was limited in time and failed to reach a level of harassment or intimidation necessary to show a violation. *Id.* However, UTT published two reports with extensive evidence Dr. Linehan acted against UTT policy. (Doc. No. 54-1; Doc. No. 54-4.) The Court may not reexamine the

evidence and determine whether Dr. Linehan violated UTT policy on Title VII or Title IX. Although Dr. Linehan believes the findings were retaliatory, she has provided no evidence that this was based on her prior complaint. *See Smith v. Board of Supervisors of Southern University*, 656 Fed. Appx. 30, 34 (5th Cir. 2016) (finding that a plaintiff's subjective beliefs she was terminated for a younger employee are not a reason for pretext). UTT has provided legitimate, nondiscriminatory reasons for all its actions, and Dr. Linehan has failed to show these reasons are pretextual. Summary judgment should therefore be **GRANTED**.

## CONCLUSION

For the reasons discussed herein, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED** and that Dr. Linehan's claims be **DISMISSED**.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 16th day of October, 2017.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE