IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MARY LINEHAN, | § | |
| | § | |
| | § | CIVIL ACTION NO. 6:16-CV-00066-RWS |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS AT TYLER, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

The above entitled and numbered civil action was referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636. The Report and Recommendation of the Magistrate Judge ("R&R"), which contains his disposition of Defendant University of Texas at Tyler's ("UTT") Motion for Summary Judgment (Docket No. 54) has been presented for consideration. Docket No. 77. The Magistrate Judge recommended granting summary judgment. *Id.* Plaintiff Mary Linehan ("Linehan") has objected (Docket No. 84) and UTT responded. Docket No. 85. Linehan also filed for leave to include new evidence on January 5, 2018 that was unavailable to the Magistrate Judge. Docket No. 89. Defendant objected to this motion. Docket. No. 92. For the reasons below, Plaintiff's Motion for Leave to Introduce New Evidence (Docket No. 89) is **GRANTED**.[1] The Court reviews *de novo* the portions of the Magistrate Judge's findings to which Linehan has raised objections. 28 U.S.C. § 636 (b)(1).

---

[1] Plaintiff filed a motion for leave to file a reply to Defendant's response (Docket No. 87), after the Court had already stricken, twice, Plaintiff's replies (Docket Nos. 86, 88) which were filed without leave of Court, and in violation of the local rules. Plaintiff then filed a second motion for leave to file a reply to Defendant's response (Docket No. 93). The Court **DENIES** both of these motions. The Court thoroughly addresses Plaintiff's objections herein, and does not believe a reply is necessary or would further assist the Court.

1

I.      **Contradictory Evidence**

Linehan argues that the Magistrate Judge ignores contradictory evidence in the record. Docket No. 84 at 2–3. Linehan first argues that the Magistrate Judge did not discuss evidence that the investigation into the claims against Linehan continued and was substantially completed while UTT was investigating Linehan's claims of gender discrimination. *Id.* Linehan mischaracterizes the Magistrate Judge's findings. As the Magistrate Judge found, students complained of misconduct in March 2014. R&R at 2. On May 13, 2014, it was determined there may be violations of sexual harassment and academic misconduct. *Id.* At that time, two investigations began to look into both allegations. *Id.* On June 4, 2014, Linehan filed a charge claiming gender discrimination. *Id.* The Magistrate Judge acknowledges that after Linehan made this complaint, Linehan's *academic* investigation was suspended because one of the people she accused of improper discriminating behavior was conducting her academic investigation. R&R at 12 (citing Docket No. 54-1 at 2, ¶ 8). Although the Magistrate Judge did not specifically state that the sexual harassment investigation continued or that the majority of interviews had been completed at this time, the evidence establishes that the investigation into Linehan's academic misconduct was stalled while the investigation into Linehan's claims proceeded. *Id.* That one aspect of the investigation continued does not meaningfully affect the Magistrate Judge's conclusion that the overall investigation into Linehan's misconduct was delayed, in part, because of her allegations of gender discrimination.

Linehan next argues that the Magistrate Judge failed to consider that the "Defendant had already cancelled Plaintiff's summer classes and two of Plaintiff's fall courses in May 2014, thus eliminating any perceived safety risk to complaining students," and that placing Linehan on mandatory leave was "overkill." Docket No. 84 at 2. Just the opposite, the Magistrate Judge did address that Plaintiff's summer courses were canceled, which "effectively [put her] on leave" and

2

that the mandatory leave was a continuation of this first leave. R&R at 12. Though two of Linehan's classes had been cancelled, she still had another class scheduled for the fall, and the school had a valid interest in placing her on leave "pending the outcome of [the] investigations[.]" *Id.* (citing Docket No. 54-2.) Despite Linehan's position that this action was "overkill," Linehan's leave was part of the progression of the investigation, and not a sudden decision or significant status change in her employment. *Id.*

Linehan argues that the Magistrate Judge ignored that the head of her Department, Martin Slann, continued his investigation in the summer of 2014, even though Linehan accused him of gender discrimination. Docket No. 84 at 2. Linehan maintains Slann's continuation of the investigation directly contradicts the University's stated reasons for prolonging the two investigations. *Id.* Linehan points to no evidence, though, that indicates Slann continued his investigation into Linehan's academic misconduct. The only evidence presented of an investigation after Linehan made her gender discrimination charge is of the investigation relating to students' sexual harassment complaints; this investigation, however, was separately conducted by a party who was not charged in Linehan's gender discrimination complaints. Docket No. 54-1 at 34–35.

Linehan contends that the Magistrate Judge failed to acknowledge that UTT did not inform Linehan of the investigation's progress and of the additional allegations that were the subject of inquiry, and that she therefore could not properly defend herself or receive due process. Docket No. 84 at 2. This is incorrect. The Magistrate Judge specifically addressed the issue of keeping Linehan appraised of the investigation. R&R at 14. The Magistrate Judge found that, although policies were not followed, "[a] defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other []

employees because Title VII does not protect employees from arbitrary employment practices of their employer, only their discriminatory impact." R&R at 14 (citing *Turner v. Baylor Richardson Medical Cntr.*, 476 F.3d 337, 356 (5th Cir. 2007) (internal quotation omitted)).

Lastly, Linehan argues that the Magistrate Judge failed to consider that Linehan requested a meeting after receiving the first complaints from students in March 2014. Docket No. 84 at 3. Linehan states that UTT handbook of Operating Procedures, UT System rules, and federal guidance require such investigations to commence immediately, but that the first investigation did not commence until May 2014. *Id.* Linehan points out that the procedures of the investigation should have concluded within 60 days, but that they continued even after 60 days. *Id.* Linehan concludes that these inconsistencies create an issue of material fact. *Id.* The Court disagrees, and does not see how these procedurals deficiencies are relevant to the issue of whether UTT retaliated against Linehan for her assertion of gender discrimination. Linehan did not even complain to the EEOC or complain of gender discrimination until June 2014. There is no evidence that UTT had any retaliatory animus for conduct before the June 2014 complaint.[2]

Even if Linehan's requested meeting was relevant, the Magistrate Judge analyzed the conduct of UTT during the months between March 2014 and May 2014. R&R at 7–8. The Court found that a group of five students went to Linehan's department chair (Marcus Stadelmann) and to Slann at the end of March. *Id.* at 7 (internal citations omitted). Stadelmann arranged the interviews and did tell Linehan about a few of the complaints. *Id.* Her classes were watched to make sure there was no retaliation, and then Stadelmann, Slann, and the Associate Dean met with the students to discuss the issues. *Id.* A second complaint was made to Stadelmann in April about

---

[2] Although the investigation extension past UTT's 60 day requirement did occur after Linehan's complaint, the Magistrate Judge specifically addressed this fact and noted there was no evidence that the reason for extending the investigation past 60 days was pretextual. R&R at 14.

4

potential academic misconduct. *Id.* Then, on April 21, 2014, the Dean of Students was notified about the Title IX concerns. *Id.* The Dean met with the students personally from May 5–7, 2014, and after the interviews, determined there may be evidence of misconduct and notified Linehan on May 13, 2014. *Id.* Although Linehan argues the investigation did not start until May, the record shows that the preliminary investigation began in March, after the complaints were first made, to determine if there was any need for an official investigation. *Id.* In addition, although Linehan did not receive an interview, there is no showing that the lack of an interview had any basis in retaliatory animus. *See Turner*, 476 F.3d at 346. The objection that the Magistrate Judge failed to consider the above-cited evidence is **OVERRULED**.

## II. Student Safety as Pretext

Linehan re-argues that UTT's reason for her leave of absence—student safety—is pretextual, but fails to point to any error in the Magistrate Judge's findings. Docket. No. 84 at 3. Linehan argues that as of June 4, 2014, Defendant had canceled Linehan's summer courses and two of her fall courses without any explanation. *Id.* Linehan states there was no suggestion of harm or safety of students to keep Linehan on leave until May 6, 2015. *Id.* Linehan maintains this shows a pretext for keeping her on leave. *Id.* Although Linehan argues there was no suggestion of student harm or safety, the Magistrate Judge addressed the record as a whole and established that students feared retaliation from Linehan. R&R at 10–11 (citing Docket No. 54-1 at 57 (noting the initial complaint was submitted anonymously for fear of retaliation and multiple witnesses stated they would not return to UTT if Linehan was employed there)). The initial complaint stated that "[t]he largest concern is that Dr. Linehan will retaliate against those [students] who do speak" against Linehan's conduct. *Id.* at 10 (citing Docket No. 54-1 at 106). Further, the Magistrate Judge noted that there was evidence Linehan retaliated against students during her course. *Id.* (citing Docket No. 54-1 at 105) ("[I]t is my opinion that Dr. Linehan has been targeting one single

student [] on Blackboard and in grading her assignments ever since she has been defending [], a fellow student."). From this, the Court agrees that the University's decision to cancel Linehan's courses out of concern for student safety was not pretextual. Although Linehan argues that two of her fall courses had already been cancelled, this does not mean that the perceived risk of student harm was pretexual.[3] The objection is **OVERRULED**.

### III.    Temporal Proximity

Linehan argues that the Magistrate Judge erred in finding that Linehan's sole evidence in support of her claim of retaliation was temporal proximity. Docket No. 84 at 4. The Court disagrees. The Magistrate Judge disregarded Linehan's temporal proximity argument because the record indicated that her forced administrative leave was a gradual adverse action. *Id.* at 3. As stated above, UTT's exhibits showed that somewhere between five to seven students complained about Linehan in March 2014. Docket Nos. 54-1 at 104; 54-11 at 74–75. Linehan's department investigated these complaints, and a second complaint made on April 21, 2014, and notified Linehan about the academic complaints. Docket Nos. 54-1 at 4, 107; 54-11 at 74–76. The Dean of Students was notified on April 24, 2014, and the students were interviewed by the Dean. *Id.* Linehan was sent a letter stating there was evidence of misconduct and her summer classes were cancelled. Docket No. 54-8 at 9. The investigation continued, and in July 2014, in advance of the fall semester, Linehan was placed on formal administration for fear of possible retaliation against the students. Docket No. 54-2 at ¶ 3.

---

[3] Plaintiff also makes arguments about the harm she underwent during this leave and argued against the conclusions of the investigation reports of UTT, arguing that the Magistrate Judge did not address UTT's failure to give her notice of additional charges or the fact that she was given no opportunity to respond. Docket No. 84 at 4. These arguments do not explain, in light of the evidence referenced, why the finding of student safety was pretextual. Further, the Court has no basis to reconsider the conclusions set forth in UTT's findings. *Turner*, 476 F.3d at 356. There is no showing that the conclusions were based on discriminatory animus, and they are therefore irrelevant.

Linehan argues these findings are in error because the Magistrate Judge failed to recognize the clear evidence that UTT controlled the length of Linehan's leave and extended it three years. Docket No. 84 at 4. Linehan argues that the reasons for UTT's delay in concluding the investigation into the allegations of Linehan's sexual harassment are in dispute because "it had already completed the majority of the investigation and never suspended it." *Id.* at 4–5. Even if the Court considered the extended three year period part of the adverse action, Linehan still has not presented to demonstrate that this action was retaliatory. Linehan was put on official administrative leave on July 17, 2014. R&R at 2. Although a majority of the witnesses were interviewed between May 2014 and August 2014 (Docket No. 54-1 at 39 (Tolliver Report)), "UTT Policies state that the Title IX Coordinator should 'identify[] and address[] any patterns or systemic problems' while overseeing sexual harassment policies." Docket No. 54-1 at 15–16. Therefore, UTT policy permitted the investigation to continue past August 2014 to determine if there were any other systemic problems.

Further, although Linehan could have been questioned after the interviews in August 2014 when the sexual harassment investigation was ongoing, there was a second academic investigation that was put on hold due to Linehan's complaints against one of the investigators that delayed Linehan's interview. Docket No. 54-1 at 2, ¶ 8. That investigation into Linehan's complaints continued from June 2014 until September 2014. Docket No. 54-3 at 3–21. Linehan was originally believed to be on leave from October 2014 until December 2014, when in reality she was on leave for a portion of October 2014 and from December 2014 until March 2015. Docket No. 54-3 at 26–27. She was then interviewed in May 2015. *Id.* UTT's investigators had to "review and rereview" all of its documents and draft reports along with their "primary job responsibilities." Docket Nos. 54-3 at 3; 54-4 at 1, ¶ 4. UTT published its findings on December 18, 2015 based on

the evidence, reports, and responses, concluding Dr. Linehan violated University policies. Docket Nos. 54-3 at 2, ¶ 6; 54-4 at 1, ¶ 3. Throughout the timeline, the record establishes that Defendant was still investigating or waiting for Linehan to finish her leave, showing the gradual progression of Linehan's extended leave. Despite Linehan's objections, there is evidence to create a genuine issue of material fact that Defendant "knowingly and unreasonably delayed its investigation from May 2014 until December 2015." *See* Docket No. 84 at 5. The objection is **OVERRULED**.

IV. **Case Law**

Linehan argues that the case law the Magistrate Judge relied on to determine there was no *prima facie* case is easily distinguishable. Docket No. 84 at 5–6. Although there may be come factual differences, each of the cited cases provide parallels to Linehan's case supporting the conclusion that Linehan suffered a "gradual adverse job action." *See* R&R at 6 (quoting relevant portions of the case law); *see also Finch v. Texas Health & Human Serv. Comm'n*, No. H-13-3716, 2015 WL 5674834, at *6 (S.D. Tex. Sept. 25, 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). Linehan argues that, inapposite to the case law, she presented facts demonstrating that the employer's acts were in retaliation for her filing an EEOC charge. Docket No. 84 at 5–6 (citing *Finch*, 2015 WL 4675834 at *6). However, Linehan's summer classes had been cancelled on May 14 and May 20, 2014, prior to her EEOC charge, for fear Linehan would retaliate against the students. Docket No. 54-8 at 9. Linehan disagrees that this was part of her progressive discipline plan and she "was not even told why her classes were cancelled." Docket No. 84 at 5 (citing *Slatterly v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). However, Linehan noted in her Response to Defendant's Interrogatories that she was "accused of sexual harassment and before being notified of the precise charges . . . was punished. On May 14, 2014 Plaintiff's summer classes were cancelled." Docket No. 54-8 at 9. Further, the evidence shows that the possibility of retaliation was considered in March and April

8

of 2014, leading up to her summer classes being cancelled. Docket Nos. 54-1 at 57, 106; 54-8 at 9. Then, she was put on permanent leave on July 17, 2014, due to the preliminary investigation that had occurred from March through July 2014. *Id.* Linehan maintains that she had no knowledge that she may have been disciplined when she filed her discrimination charge on June 4, 2014. Docket No. 84 at 5–6 (citing *Saenger v. Montefiore Medical Cntr.*, 706 F. Supp. 2d 494, 519 (S.D.N.Y. 2010)). However, as stated, Linehan knew an investigation was underway and cannot "immunize [her]self from the reasonable and foreseeable consequences of [her] misconduct." *Saenger*, 706 F. Supp. 2d at 519. Although the cases relied on by the Magistrate Judge may not be identical, they exemplify why Linehan's *prima facie* case cannot be established. The objection is **OVERRULED**.

V. **Establishing Retaliation**

Linehan argues, with no mention of any error in the Magistrate Judge's report, that she established a causal link for retaliation because she showed (1) she had documented superior performance evaluations prior to her complaint; (2) UTT failed to follow its own personnel policies; and (3) there was temporal proximity between the two events. Docket No. 84 at 6 (citing R&R at 14). Linehan is correct that a causal link for a *prima facie* case is (1) the plaintiff's disciplinary record; (2) whether the employer followed its typical policies and procedures when taking adverse action against the employee; and (3) the temporal relationship between the employee's conduct and the adverse act. *See Green v. Trimac Transportation S., Inc.*, No. 1:10-CV-444, 2012 WL 12893293, at *17 (E.D. Tex. Sept. 12, 2012), *aff'd sub nom. Green v. Trimac Transp., Inc.*, 546 F. Appx. 333 (5th Cir. 2013). However, Linehan improperly limits the scope of her prior academic record to her prior performance evaluations, and fails to acknowledge that her disciplinary record includes the allegations and investigation of sexual harassment and academic complaints from her students that began in March 2014, almost three months before her gender

discrimination charge. Docket No. 54-1 at 74, 104. Further, although there is temporal proximity with the adverse action of enforced leave and Linehan's gender complaint, this is outweighed by the evidence referenced above and detailed in the Magistrate Judge's findings showing that the gradual adverse action arose from the investigation into the sexual and academic misconduct that was initiated before Linehan made her complaints. R&R at 6–8.

The Magistrate Judge noted that UTT failed to follow its policies and procedures when UTT failed to keep Linehan appraised of the investigation and when UTT failed to complete the investigation in 60 days. R&R at 14. However, Linehan now raises the argument that she should have been "allowed to present [her] case and evidence to a faculty panel and have the panel decide [her] guilt or innocence.[4] Docket No. 83 at 6 (citing Docket No. 64-1, ¶ 62). Plaintiff maintains this shows a deliberate and knowing delay that violated Defendant's Handbook of Operating Procedures, the UT System rules, and Federal Department of Education guidance policies. *Id.* at 7–8. However, Linehan cites no portion of the handbook, UT System rules, or Federal Department of Education guidance policies that shows there is a violation and only cites to her own declaration that she should have been given this right. Docket No. 64-1, ¶ 62. Even if there is a right to be heard by a faculty panel, "[a] defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other [] employees because Title VII does not protect employees from arbitrary employment practices of their employer, only their discriminatory impact." *Turner*, 476 F.3d at 346. The record as a whole does not show that the failure to give Linehan a faculty panel had any discriminatory or retaliatory animus or that others were treated differently. The objection is **OVERRULED**.

---

[4] This argument is not in her response to the summary judgment motion. Docket No. 64. The Court notes this argument was in the original complaint, and therefore should have been briefed before this instance.

## VI. Length of Plaintiff's Mandatory Leave

Linehan reiterates her above arguments that because the leave was a deliberate slow-down of the investigation and that UTT disregarded its own procedures, UTT rules, and federal guidance, there is a genuine issue of material fact in this case, but does not point to any error in the Magistrate Judge's finding. Docket No. 84 at 7. As the Court has already noted, and as the Magistrate Judge correctly assessed, the record as a whole shows that UTT had a legitimate, non-retaliatory reason for why the investigation occurred as it did from March 2014 through March 2015 due to the multiple investigations and Linehan's leave. *See* R&R at 7–8. When Linehan could return from leave, she was interviewed in May 2015. Docket No. 54-3 at 26–27. UTT's investigators then had to "review and rereview" all its documents and draft reports along with their "primary job responsibilities." Docket Nos. 54-3 at 3; 54-4 at 1, ¶ 4. UTT published its findings in December 2015 based on the evidence, reports, and responses, concluding Dr. Linehan violated University policies. Docket Nos. 54-3 at 2, ¶ 6; 54-4 at 1, ¶ 3. As stated in the Magistrate Judge's report, the Court acknowledges that the length of the investigation violates UTT policy requiring a 60 day investigation. R&R at 13. However, UTT has articulated reasonable and legitimate reasons for all these delays and has shown the investigation was not pretextual. *Id.* at 13. For these reasons, there is no genuine issue of material fact for trial. The objection is **OVERRULED**.

## VII. Evidence Supporting Deliberate Delay

Plaintiff does not argue any error in the Magistrate Judge's findings, but generally argues that the record shows an "equally plausible finding from this evidence [] that Defendant delayed the conclusion of its investigation in an attempt to dig up further facts that were remote in time, and never the subject of any complaint, in order to conceal its retaliatory intent." Docket No. 84 at 8. Plaintiff maintains she did not receive names of people making complaints or written copies of the charges, along with the fact that the reports are "clearly based on questionable and

11

inadmissible hearsay relating to events as far back as 2010 and 2011." *Id.* Although Plaintiff believes these findings could be "equally plausible," the issue for the Court is not whether UTT violated its policies or came to the correct conclusion in its investigation but whether there is sufficient evidence to create a genuine issue of material fact for trial of an adverse employment action that is connected to a Linehan's protected Title VII activity. *LeMaire v. Louisiana Dept. of Transp. & Develop.*, 480 F.3d 383, 388 (5th Cir. 2007) (internal citation omitted). The Court agrees with the Magistrate Judge that such evidence has not been presented in this case. R&R at 10–15. The objection is **OVERRULED**.

## VIII. New Evidence

Linehan filed a Motion for Leave to Introduce New Evidence, arguing that there is new evidence that was unavailable to the Magistrate Judge at the time of his Report and Recommendation. Docket No. 89. The new evidence is an unsigned document entitled Evaluation for the Spring 2017 Semester Department of Political Science and History: Dr. Mary Linehan. Docket No. 89-1. UTT argues that this motion should be denied because Linehan had the evaluation in her possession when she filed her objections, and the motion is therefore untimely. Docket No. 92 at 5. UTT objects to the evaluation on authentication grounds as well, maintaining that the language in the evaluation was drafted by Linehan during a negotiation between UTT and Linehan that was never finalized. *Id.* at 6. UTT contends that the motion should be denied because the evaluation is irrelevant, as Linehan was not disciplined for simply administering the Facebook page, rather, she was disciplined for her "conduct and communication on social media *with current students*." *Id.* at 7. (emphasis in original).

The Court notes that the evaluation was filed as new evidence on January 5, 2018, even though Linehan states she received it on November 28, 2017. Docket. No. 89. During this time, Linehan filed her amended objections, a reply that was filed in violation of the local rules, and a

12

motion for leave to file a reply. Docket Nos. 84, 86, 87. She did not file this new evidence in any of these briefings. *Id.* Further, the evaluation appears unsigned, and according to UTT it is a negotiation between Linehan and UTT over an official review, and therefore not the evaluation Linehan alleges in her motion. Docket Nos. 89-1, 92. Despite these deficiencies, the Court, out of an abundance of caution, considers the new evidence for purposes of the summary judgment motion.

Linehan states that this evaluation "commends [Linehan's] job performance with regard to her use of Facebook and her involvement with three Facebook groups" which included the Facebook group Historians of Tyler (referred to as "HOTTIES"). Docket No. 89 at 1. Linehan notes that the investigative reports in December 18, 2015 criticized her use of Facebook to communicate with students and her involvement in HOTTIES, and UTT relied on her communications in this Facebook group to justify suspending Linehan. *Id.* Linehan argues this evidence directly contradicts UTT's reason for suspending Linehan and calls into question the investigative reports. *Id.* at 2–3. Although Plaintiff argues that this evaluation creates contradictory evidence, the evaluation does not call into question UTT's reasons for placing Linehan on investigation or on leave. The purported evaluation shows a medium rating for Linehan's service in the community, and it noted that her service included running several Facebook groups, including HOTTIES. *Id.* The record shows that UTT's earlier concern with the Facebook group was not the group itself, but that Linehan "blurred the lines between personal use and academic use." Docket No. 54-4 at 11. The academic misconduct report noted that she would post personal messages on this group, as well as post information from class on this site instead of on the school site, so that only students who were part of the Facebook group received class information. *Id.* The report also noted that she was taking photographs and information from

students' personal sites without permission and using them on her Facebook group. *Id.* The report documented numerous students who complained about this conduct. *Id.* at 12–14. UTT sent Linehan a letter about this Facebook group after students complained, and warned Linehan that communications in this Facebook group should be professional. *Id.* at 12. The sexual harassment report noted that Linehan encouraged students to join the Facebook group and gave information from class on the Facebook group before posting it to the academic site. Docket No. 54-1 at 47. This report noted that Linehan likely treated the Facebook group in such a way so as to make it appear to be affiliated with UTT. *Id.* at 48. The record shows that Linehan was not reprimanded for participating in the group itself, but for the information she disseminated in the group in violation of UTT policy. Docket Nos. 54-1, 54-4. That Linehan may have been rated well for using the Facebook group in 2017 does not change the Court's conclusion that UTT's decision to place Linehan on leave was not based on retaliatory animus.

## CONCLUSION

The Court, having conducted a *de novo* review of Plaintiff's objections, and agreeing with the Magistrate Judge's findings of fact and conclusions of law, **ADOPTS** the Report and Recommendation of the United States Magistrate Judge as the findings and conclusions of the Court. All objections are **OVERRULED** and UTT's Motion for Summary Judgment (Docket No. 54) is **GRANTED**. Docket No. 77. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**SIGNED this 5th day of February, 2018.**

*Robert W. Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE